<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT P., | Civil Action No. 24-273 (SDW) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | January 17, 2025 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Robert P.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Flor M. Suarez's ("ALJ Suarez") denial of Plaintiff's claim for supplemental security income ("SSI") and a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (D.E. 1.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.     PROCEDURAL AND FACTUAL HISTORY**

    **A.     Procedural History**

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

1

On July 23, 2020, Plaintiff filed concurrent applications for DIB and SSI (D.E. 5 (Administrative Record ("R.")) at 105–07), alleging disability beginning on June 27, 2019 ("onset date"), due to bipolar disorder, depression, social anxiety disorder, and arthritis. (R. 108.) The Social Security Administration ("SSA") initially denied Plaintiff's application on April 17, 2021 and upon reconsideration on July 12, 2021. (R. 158–62, 171–75.) ALJ Suarez held an administrative hearing via telephone on April 7 and July 7, 2022.[2] (R. 50–104.) The ALJ found Plaintiff last met the insured status requirement of the Act through December 31, 2021. (R. 12.) On December 27, 2022, the ALJ issued a written decision denying Plaintiff's applications and found that Plaintiff was not disabled from the onset date to the date of last insured. (R. 23–24.) The Appeals Council denied review on November 22, 2023 (R. 1–6), making the ALJ's decision the Commissioner's final determination. *See* 20 C.F.R. § 416.1455. Plaintiff appealed to this Court; the parties timely completed briefing. (D.E. 11 & 13.)

### B. Factual History

Plaintiff was born on November 23, 1978, and has at least a high school education. (R. 22, 64.) From 2013 to October 2016, Plaintiff worked for Full Steam Staffing LLC, driving a forklift and pulling orders. (R. 65, 91–92, 416.) While employed by Full Steam Staffing LLC, Plaintiff would lift one hundred pounds with additional help and frequently lift fifty pounds by himself. (R. 91–92.) Plaintiff maintains he stopped working on the alleged onset date due to his mental health impairments. (R. 378.)

1. <u>Medical Record</u>

---

[2] On January 6, 2022, after learning of Plaintiff's pending social security appeal before the Honorable Madeline Cox Arleo, U.S.D.J., ALJ Suarez postponed having an administrative hearing until that matter was decided. (R. at 44–47.) On February 24, 2022, Judge Arleo issued an opinion affirming the Commissioner's denial of SSI and DIB benefits, *Pfleger v. Commissioner of Social Security*, No. 20-10757, 2022 WL 577967, at *1 (D.N.J. Feb. 22, 2022).

2

On April 14, 2017, Plaintiff visited G&S Medical Associates, LLC, complaining of edema and ear discharge. (R. 459.) During said visit, Plaintiff reported he was receiving psychological care with Dr. Diamato, given his history of bipolar, ADHD, and anxiety disorders. (*Id.*) Plaintiff reported taking Depakote and Zoloft. (R. 461.) In October 2017, Dr. Kim Arrington's, Psy. D., report indicates Plaintiff reported "dysphoric moods, fatigue, difficulty concentrating, irritability, crying spells, isolating himself from others, and hopelessness." (R. 567.) Dr. Arrington noted Plaintiff's affect was "anxious and depressed," but that his "manner of relating, social skills, and overall presentation were adequate." (R. 568.) Dr. Arrington also noted that Plaintiff's difficulties "appear[ed] attributable to mood fluctuations and anxiety," but that Plaintiff would still be able to: follow and perform simple tasks independently; follow and understand simple instructions; and maintain a regular schedule. (R. 569.) Dr. Arrington recommended Plaintiff continue with his psychiatric treatment. (*Id.*)

On March 21, 2019, Dr. Ernesto Perdomo, Ph.D., conducted a psychological evaluation of Plaintiff. Dr. Perdomo described Plaintiff as being "oriented to time, place, and person," but also being "very fidgety," with an angry and anxious affect. (R. 571.) Among other feelings, Plaintiff reported feelings of "sadness, tiredness, no desire, no interest, no motivation, anger, anger control problems" to Dr. Perdomo. (*Id.*) Dr. Perdomo described both Plaintiff's short-term and long-term memory as "good," his concentration as "fair," and an intelligence within the "average to low average range." (R. 572.) Ultimately, Dr. Perdomo diagnosed Plaintiff with the following disorders: bipolar one (presently depressed), intermittent explosive, borderline personality, cannabis abuse, panic, and generalized anxiety. (*Id.*) The doctor noted Plaintiff's condition would "affect his ability to function in occupational and social spheres of life." (*Id.*)

3

On August 16, 2020, Plaintiff's mother, Sheila Malley, submitted a Third-Party Function Report in which she shared information about Plaintiff's daily activities, personal care, and other habits, in addition to his physical and mental capacities in light of his alleged conditions. (R. 394–405.)  Two days later, Plaintiff submitted a Function Report on his behalf.  (R. 385–93.)  Plaintiff's report indicated he lived alone; that he could no longer bend down, lift heavy weight, or sit for a long time; that his girlfriend had to remind him to shower or shave sometimes; that he did not go outside often, but only "when [he had] to," due to his social anxiety; and that he typically stayed home watching television and playing video games.  (R. 385–89.)  Plaintiff also indicated he handled stress poorly and that he had been fired from a job due to "fighting with coworkers."  (R. 390.)  Plaintiff's Mother's Third-Party Functional Report largely corroborated Plaintiff's report.  (R. 394–95, 399–404.)

On January 22, 2021, Dr. Joyce Echo, Ph.D, conducted a mental status exam of Plaintiff.  She described Plaintiff's affect as "limited in range, but context congruent," with "no mood lability" and no suicidal or homicidal ideation.  (R. 486.)  Regarding memory testing, Dr. Echo reported Plaintiff initially recalled three of three words immediately, but after five minutes, could only recall one word.  (*Id.*)  With respect to attention and concentration, Dr. Echo reported Plaintiff was unable to spell "world" backwards correctly, but did note Plaintiff "repeated up to 6 digits forward and 3 digits backward."  (*Id.*)  Ultimately, Dr. Echo concluded Plaintiff had "some memory retrieval deficits," such that he would be capable of performing simpler tasks but would "likely have some difficulty" carrying out a "more involved" task or performing a task if faced with distractors.  She also found Plaintiff had "basic cognitive processing skills to do routine jobs, but the major impetus [was] his mood disorder."  (*Id.*)

4

In February 2021, Dr. Wayne Tillman, a state agency psychology consultant, found that Plaintiff's ability to understand and remember detailed instructions and to keep a schedule without interruptions from "psychologically based symptoms" was moderately limited. (R. 133.) He also found Plaintiff had social interaction limitations, but that these were moderate. (R. 134.) Dr. Tillman found Plaintiff's ability to carry out simple instructions, remember locations and work-like procedures, and to be aware of normal hazards and take precautions were not significantly limited. (R. 134–35.) As such, Dr. Tillman concluded Plaintiff was not disabled. (R. 114, 121.) Joyce Fierstien, Ph. D., affirmed Dr. Tillman's findings in July 2021. (R. 141–44.)

Dr. Ronald Bagner, M.D., examined Plaintiff on March 30, 2021 and stated his impression was "arthritis," but also noted Plaintiff had a normal range of lower back movement, ambulated "at a reasonable pace," and that his knees, ankles, and feet had a normal range of movement. (R. 492–93.)

In April 2021, state agency medical consultant Esther Tomor, M.D., concluded Plaintiff had medically determinable impairments, but that these were medically non-severe. (R. 109–10, 116–17.) Dr. Tomor opined Plaintiff's impairments did not satisfy the criteria of any listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1; the mental limitations in the "B" criteria were moderate; and the evidence did not establish the presence of "C" criteria. (R. 110, 117.) Nancy Simpkins, M.D., affirmed these findings in June 2021. (R. 140, 147.)

In December 2021, Jude C. Emelumba, D.N.P., assessed Plaintiff's ability to perform work-related activities. (R. 573–75.) Doctor Emelumba indicated Plaintiff had little to no capability to understand, remember, and carry out complex, detailed, or simple job instructions. (R. 574.) He also found Plaintiff had little to no ability to behave in an emotionally stable manner or relate predictably in social situations. (*Id.*) Doctor Emelumba opined Plaintiff exhibited bipolar

symptoms, mood swings, and paranoia. (R. 575.) He concluded Plaintiff could not function in social settings "necessary to hold down a job." (*Id.*)

  2. <u>Administrative Hearing</u>

Plaintiff was represented by counsel at the administrative hearings held on April 7 and July 7, 2022. (R. 50, 80.) ALJ Suarez heard testimony from Plaintiff and an impartial vocational expert Kenneth Smith ("VE Smith"). (*See generally* R. 50–104.)

Plaintiff testified as to his struggles with maintaining employment because he "usually gets into fights with people," more specifically "other employees, customers, supervisors." (R. 66–67.) He testified: "I get fired from a lot of my jobs because I don't listen. I don't know why I don't listen, but I just don't listen." (R. 66.) For example, Plaintiff testified about how his last employer—Full Steam Staffing—terminated him because he had a confrontation with a mixer. (R. 68.) Plaintiff also testified as to his struggles with high stress levels, constantly being in a bad mood, depression, mood swings, and chest pains. (R. 70, 76–77.) He testified he did not believe there is any type of job he could do because in the past, when he got anxiety and anxiety-induced chest pains at work, he would leave. (R. 76–77.)

VE Smith testified that an individual with a medium RFC who can perform simple and routine tasks and handle low-stress jobs—specifically excluding assembly belt-type work—would be unable to perform Plaintiff's past work. (R. 93.) However, VE Smith testified, this person would be capable of performing the jobs of hospital cleaner, kitchen helper, a counter supply worker, and a laundry worker. (R. 93–94.)

 **II.** **LEGAL STANDARD**

  **A. Standard of Review**

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high. *Id.* An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986). So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

B. The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). The ALJ determines whether the claimant: first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii). Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates

7

to meeting "the physical, mental, sensory, and other requirements of work. *Id.* §§ (a)(4)(iv), 404.1545(a)(4). Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work[3] by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* §§ (a)(4)(iv), (f). Lastly, at step five the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner. *Hess*, 931 F.3d at 201.

### III. DISCUSSION

#### A. The ALJ's Decision

On December 27, 2022, ALJ Suarez issued a decision concluding that Plaintiff was not disabled from the alleged onset date to the date of last insured. (R. 11.) At step one, the ALJ found that Plaintiff had not engaged in SGA since June 20, 2020—the alleged onset date. (R. 12.) At step two, the ALJ found Plaintiff has the following severe impairments which significantly limit the ability to perform basic work activities: cognitive processing disorder, mood dysregulation disorder, anxiety disorder, bipolar disorder (depressed type, mild), and cannabis use disorder. (R. 13.) ALJ Suarez determined that Plaintiff's mild osteoarthritis of the first metacarpal, mild degenerative changes to the bilateral first metatarsals, edema in the bilateral hands and feet, and obesity with a body mass index ("BMI") of 33.6 constituted non-severe impairments, whether considered individually or in combination. (*Id.*) The ALJ determined the evidence showed these impairments were managed medically and noted "no aggressive treatment was recommended or anticipated for them." (*Id.*)

---

[3] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1)(i).

At step three, ALJ Suarez concluded that Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.) In considering Plaintiff's mental impairments, the ALJ determined Plaintiff has moderate limitations regarding the following: remembering or applying information; interacting with others; concentrating and maintaining pace; and adapting or managing oneself. (R. 14–17.) According to the ALJ, Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'extreme' limitation," and thus failed to satisfy the "paragraph B" criteria.[4] (R. 14.)

Next, ALJ Suarez found that Plaintiff has the RFC to perform medium work. (R. 18.) In coming to this conclusion, she considered the longitudinal evidence demonstrating Plaintiff's psychiatric diagnoses of bipolar disorder, attention deficit hyperactivity disorder, and anxiety as of 2017 to the present. (R. 19–21.) Although Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," ALJ Suarez determined Plaintiff's statements concerning the intensity, persistence, and limiting effects were inconsistent with the medical evidence. (R. 21.) ALJ Suarez noted the opinion evidence was "generally in agreement that [Plaintiff's] mental impairments cause moderate symptoms but would still allow him to perform simple work." (*Id.*) ALJ Suarez was unpersuaded by Doctor Emelumba's opinion after finding his records—which demonstrated "a stable patient with few complaints"—minimally supported his opinion. (*Id.*)

At step four, the ALJ concluded Plaintiff's past relevant work was as a fork lifter. (R. 22.) At step five, relying on the VE's testimony, the ALJ found that Plaintiff could perform work that

---

[4] The "paragraph B" criteria refer to the criteria of listings 12.02, 12.04, and 12.06. In her decision, ALJ Suarez explained that to satisfy said criteria, "the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (R. 14.)

9

exists in significant numbers in the national economy such as being a hospital cleaner, counter supply worker, or laundry worker. (R. 22–23.) ALJ Suarez thus concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 23.)

### B. Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 11 ("Mov. Br.") at 4.) Plaintiff takes issue with the ALJ's RFC determination on two grounds. This Court considers the arguments in turn and finds each unpersuasive.

#### i. Medical Evidence

Plaintiff claims the ALJ's RFC determination was not based on substantial evidence, but instead rejected "every opinion of every mental health professional who had ever examined or treated" Plaintiff. (*Id.* at 6, 29.) Plaintiff maintains the ALJ failed to explain the decisional RFC. (*Id.* at 15, 24.) Plaintiff disagrees with the ALJ's conclusions concerning the medical opinions of Doctors Arrington, Perdomo, Echo, and Emelumba. (*Id.* at 15–22.)

ALJ Suarez has the exclusive responsibility of making an RFC determination and examines "all of the relevant medical and other evidence" to do so. 20 C.F.R. §§ 404.1545(a) & 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.2d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). When considering medical evidence, a treating physician's opinion "does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). In conducting his or her analysis, the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Instead, the ALJ must simply "articulate how [he or she] considered the medical opinions or prior administrative medical findings from [a] medical

10

source together in a single analysis" considering the eight factors set out in 20 C.F.R. § 404.1520c(c).  *Id.*  Of the eight factors, however, supportability (factor one) and consistency (factor two) are the most important and must be addressed; factors three to eight may, but need not, be addressed.  *Id.* § 404.1520c(b)(2).

In coming to her RFC determination, ALJ Suarez explained how she considered the medical opinions and prior administrative medical findings in evidence.  Plaintiff takes issue with the *weight* ALJ Suarez assigned to the medical opinions of Doctors Arrington, Perdomo, and Echo—which were all deemed "partially persuasive." (Mov. Br. at 15–21.)  But ALJ Suarez articulated why she deemed each of these opinions "partially persuasive," (R. 19–20), and this Court is in no position to re-weigh the evidence.  *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").  For example, ALJ Suarez explained she found Dr. Arrington's opinion partially persuasive because it was "remote," with Plaintiff's examination having been conducted in 2017, "more than a year prior to [Plaintiff's] alleged onset of disability." (R. 19.)  She also explained the portions she found persuasive, noting Dr. Arrington had personally evaluated Plaintiff.  (*Id.*)    As to Doctor Emelumba, ALJ Suarez explained she deemed his opinion unpersuasive because his records "showed a stable patient with few complaints," such that the notes offered "minimal support" for his opinion. (R. 21.)

In reviewing ALJ Suarez's decision and the record, this Court finds that the RFC determination was supported by substantial evidence.  *See Zaborowski*, 115 F.4th at 639.  In assessing Plaintiff's RFC, ALJ Suarez provided a sufficient narrative discussion of Plaintiff's longitudinal medical record which considered the medical evidence in the record and explained

11

how she came to the conclusion that Plaintiff's impairments "cause moderate symptoms, but would still allow him to perform simple work" consistent with 20 C.F.R. § 404.1520c(c). (R. 21.)

### ii. Third Party Statement

Plaintiff also contends ALJ Suarez failed to seriously consider his mother's Third-Party Function Report ("the Report") in her RFC analysis. This Court rejects this argument, as it amounts to another offer for this Court to re-weigh the evidence. Contrary to Plaintiff's assertion, ALJ Suarez discussed Ms. Malley's Third-Party Function Report in the RFC analysis portion of her opinion. (R. 19.) ALJ Suarez characterized the Report as "congruent with [Plaintiff's] first party report," and found the Report persuasive "to the extent it is supported with the objective record and consistent with the rest of the opinion evidence." (*Id.*) Notwithstanding that Ms. Malley did not "appear to be an acceptable medical source," ALJ Suarez found Ms. Malley "had an extensive opportunity to observe [Plaintiff's] functionality." (*Id.*) This Court finds ALJ Suarez sufficiently addressed and considered Ms. Malley's report. *See* 20 C.F.R. § 404.1520c(b)(1); *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. Apr. 16, 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."); *E.R.M. v. Comm'r of Soc. Sec.*, No. 22-6012, 2023 WL 6810297, at *6 (D.N.J. Oct. 16, 2023) (rejecting the plaintiff's argument that a remand was necessary because the ALJ failed to consider the plaintiff's daughter's third-party statement where the statement was "cumulative of [the plaintiff's] own testimony" which the ALJ had considered).

### IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

                                      /s/ Susan D. Wigenton
                              **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties